UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
ADMINISTRATIVE COMMITTEE OF       :
THE DILLARD'S, INC. GROUP HEALTH,:
DENTAL, AND VISION PLAN,             :
                                                :   CASE NO. 1:14-CV-01165
          Plaintiff,                        :
                                                :
v.                                            :   OPINION & ORDER
                                                :   [Resolving Docs. 52, 56]
MAY SARROUGH, *et al.*,              :
                                                :
          Defendants.                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this ERISA case, Defendants May Sarrough (as Administrator of the Estate of Hanan Saah) ("Sarrough"), the Law Offices of Bashein & Bashein Co. LPA ("Bashein"), and Paul W. Flowers Co., L.P.A. ("Flowers"), seek attorney's fees and litigation expenses under 29 U.S.C. § 1132(g)(1), or, in the alternative, under the Court's inherent authority to sanction abusive litigation practices.[1] Plaintiff the Administrative Committee of the Dillard's, Inc. Group Health, Dental, and Vision Plan ("Dillard's") opposes the award of fees,[2] and requests that the Court stay Defendants' motion pending the resolution of Dillard's appeal of the Court's summary judgment decision.[3]

For the following reasons, the Court **DENIES** Dillard's motion for a stay and **GRANTS IN PART** Defendants' motion for fees. The Court awards fees to Flowers in the amount of $25,388.65, and to Bashein in the amount of $17,250.00.

---

[1] Doc. 52.
[2] Doc. 55.
[3] Doc. 56. Defendants oppose this request. Doc. 59.

-1-

Case No. 1:14-CV-01165
Gwin, J.

## I. Background

This case has a complicated procedural history involving parallel state and federal litigation.

Dillard's provided an ERISA benefit plan to Hanan Saah. Saah was critically injured in a February 2011 car accident and died in July 2011 after months on life support. Dillard's covered $260,370.60 of Saah's medical expenses during that period.[4]

**A. State Court Proceedings**

On May 31, 2012, Sarrough, as Administrator of Saah's estate, filed suit in Cuyahoga County Common Pleas Court seeking damages from drivers involved in the accident. Sarrough, represented by Bashein, described the claim as "a wrongful death action" brought "for the exclusive benefit of the surviving next of kin of the deceased."[5]

On April 14, 2014, Administrator Sarrough filed an application in Cuyahoga County Probate Court to approve a settlement reached in that case. The application requested approval of a $300,000 settlement split equally between Saah's four children, less attorney's fees paid to Bashein.[6]

In an attached memorandum, Administrator Sarrough noted that outstanding claims existed against the Estate. In seeking the complete wrongful death settlement, Administrator Sarrough argued:

> Given the low limits in this case, and the fact that Hanan Saah was unconscious and brain dead immediately following the accident there would be no reason to allocate any funds to the survivorship claim. All of the funds should be allocated to the wrongful death claim so that her surviving children can receive the net funds even though they are only receiving a fraction of what this wrongful death would be worth had their coverage been full. By allocating the funds to the wrongful death (which is

---

[4] Doc. 1.
[5] Doc. 6-1.
[6] Doc. 47-4.

Case No. 1:14-CV-01165
Gwin, J.

> supported by the underlying facts in this case and Ohio law), the medical insurance carrier for Mrs. Saah or any hospital claiming an unpaid bill would not be in a position to attempt to deprive the [sic] Mrs. Saah's beneficiaries of what little compensation is available . . . .[7]

On April 24, 2014, the Probate Court approved the settlement. But on May 20, 2014, Dillard's filed a motion in the Probate Court to intervene and vacate the distribution of the settlement. Citing ERISA, Dillard's said that Saah's benefit plan gave it the right to recover "all benefits it paid on the decedent's behalf for accident related injuries" from the funds her estate recovered.[8] Dillard's argued that "the Plan stands in the shoes of the Estate and decedent" and thus has priority to have its expenses reimbursed.[9]

The motion to intervene was granted,[10] and Dillard's proceeded to extensively litigate its claim in the Probate Court. After a hearing, a magistrate judge issued a report and recommendation that the original settlement disbursement be approved and that Dillard receive nothing.[11] Dillard's filed voluminous objections to the report and recommendation, and participated in two oral arguments before the Probate Court.[12]

Dillard's argued that Saah was enduring conscious pain and suffering during the months that Dillard's covered her medical bills. Dillard's maintained that some of the settlement should be allocated to Saah's pain and suffering, and that Dillard's should be able to recover its expenses from this amount. Dillard's argued that Saah was not actually in a coma during the sixth months after the

---

[7] Doc. 47-3 at 8.
[8] Doc. 47-5 at 1.
[9] *Id.* at 3.
[10] Doc. 47-7.
[11] Doc. 47-8.
[12] *See The Estate of Hanan Saah*, No. 2011-EST-173562 (Cuyahoga Cnty. Prob. Ct.). Docket available at http://probate.cuyahogacounty.us/.

Case No. 1:14-CV-01165
Gwin, J.

accident. Dillard's even said that Saah died because her family denied her medical treatment.[13]

On April 10, 2015, the Probate Court rejected Dillard's arguments, and affirmed the magistrate's decision. The Probate Court found that Dillard's "has been unable to provide any new or credible evidence in support of conscious pain and suffering" that could justify reallocating the funds from a claim for wrongful death.[14] The Probate Court found "that the entirety of the settlement proceeds should be attributed to the wrongful death action, leaving no possibility of proceeds passing through Decedent's estate."[15]

**B. Federal Court Proceedings**

On May 30, 2014, ten days after Dillard's filed its motion to intervene in the Probate Court, Dillard's filed suit in this Court. Dillard's invoked jurisdiction under ERISA and sought a constructive trust and equitable lien over the settlement proceeds.[16] Dillard's named Administrator Sarrough and Bashein as defendants, stating that both were in possession of funds that rightfully belonged to Dillard's. Dillard's again argued that the terms of its plan with Saah gave it first priority to recover any settlement proceeds for Saah's injuries.[17]

On July 14, 2014, Dillard's sought leave to file an amended complaint, naming Paul W. Flowers Co., L.P.A. ("Flowers") as a defendant. Dillard's stated that Flowers was also listed as counsel of record for Saah's estate. Dillard's stated its belief that Flowers "received a separate share

---

[13] Objections to Magistrate's Decision and Recommendation to Approve Settlement, *The Estate of Hanan Saah*, No. 2011-EST-173562 (Cuyahoga Cnty. Prob. Ct. Nov. 19, 2014).
[14] Doc. 39-1 at 3.
[15] *Id.*
[16] Doc. 1.
[17] *Id.*

Case No. 1:14-CV-01165
Gwin, J.

of the $300,000.00 settlement which rightfully belonged to the Plan at all relevant times."[18] Flowers opposed the motion, submitting an affidavit that he had not received any settlement funds.[19] Flowers also pointed to the Probate Court's distribution order, which allocated funds to Bashein but made no mention of Flowers.[20]

On August 21, 2014, the Court held a case management conference.[21] The Court questioned Dillard's as to why its suit in federal court would not be duplicative of the Probate Court proceedings. After that hearing, the Court agreed with Defendants that the decision from the Probate Court proceedings would have preclusive effect in the matter.

The Court therefore declined to set dates at the case management conference, instead instructing the parties that the matter would be stayed until the Probate Court proceedings were resolved. Nonetheless, Dillard's sought leave to file a motion for summary judgment before the Probate Court decision was issued.[22]

After the Probate Court issued its ruling in April 2015, the Court instructed the parties to file cross-motions for summary judgment. A month after stating that "this matter is ripe for the Court to grant a Motion for Summary Judgment" its favor,[23] Dillard's backtracked and sought additional time to conduct discovery, an expanded briefing schedule, and oral argument.[24]

On June 1, 2015, the Court granted summary judgment in Defendants' favor. The Court

---

[18] Doc. 13 at 4.
[19] Doc. 19-4.
[20] Doc. 19.
[21] Doc. 34.
[22] Doc. 36.
[23] *Id.* at 7.
[24] Doc. 41.

-5-

Case No. 1:14-CV-01165
Gwin, J.

found that the Probate Court's final order precluded Dillard's claim to the settlement proceeds. The Court noted that it "will not re-litigate this matter because a state court did not find the facts to be in Dillard's favor."[25]

## II. Standards

### A. Attorney's Fees Under ERISA

ERISA provides that "in the Court's discretion," the Court may award a party who can "show some degree of success on the merits" reasonable attorney's fees and costs.[26] The Sixth Circuit has identified five factors that a district court should consider in determining whether an award of attorney's fees and costs is appropriate under 29 U.S.C. § 1132(g)(1). These factors are:

> (1) [T]he degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.[27]

These factors are flexible, and none of them are necessarily dispositive.[28]

### B. Inherent Power to Award Fees as Sanction

"[T]he inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation."[29] But "[g]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists."[30]

---

[25] Doc. 60.
[26] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citing 29 U.S.C. § 1132(g)(1)).
[27] *Armistead v. Venitron Corp.*, 944 F.2d 1287, 1301 (6th Cir. 1991) (quoting *Sec'y of the Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).
[28] *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996).
[29] *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002).
[30] *Gillette Foods v. Bayernwald Fruchteverwertung*, 977 F.2d 809, 813 (3d Cir. 1992).

Case No. 1:14-CV-01165
Gwin, J.

### III. Analysis

**A. Request for Stay**

Dillard's asks the Court to stay its decision on attorney's fees pending the resolution of Dillard's appeal before the Sixth Circuit. The Court finds that judicial economy counsels in favor of resolving the attorney's fee issue sooner rather than later. The present order will allow Dillard's to file a consolidated appeal of the Court's summary judgment order and the award of fees.

**B. Five-Factor Test for Fees**

First, the Court considers the opposing party's culpability or bad faith. In assessing this factor, the Court considers both subjective bad faith and objective culpability. Thus, a party can be culpable without possessing an ulterior motive if its position lacks justification.[31/]

The Court summarily rejected Dillard's arguments in issuing its summary judgment opinion, indicating that Dillard's position lacked merit.

More importantly, Dillard's filed a parallel and duplicative federal action after moving to intervene in Probate Court. In both suits, Dillard's advanced essentially the same argument and sought to recover the same funds. After being granted leave to intervene in the Probate Court proceedings, Dillard's did not dismiss its federal complaint, but instead extended the time and cost of the proceedings. The Court is left with the distinct impression that the federal action was filed to increase pressure on the Defendants to settle the Probate Court matter.

Dillard's now represents that at the case management conference, "Defendants did not

---

[31/]*See* *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256-57 (3d Cir. 1994); *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 840 (S.D. Ohio 2014).

Case No. 1:14-CV-01165
Gwin, J.

request a stay, object to dual proceedings or raise res judicata."[32] These representations are false. Defendants strenuously objected to the dual proceedings both in person and in their filings before the Court. Defendant Flowers, for instance, even objected to Dillard's motion for leave to name him as a defendant in an amended complaint.[32]

Even after the Court instructed the parties that the case would be stayed so that the Probate Court could resolve the matter, Dillard's continued to escalate the federal proceedings. After a magistrate judge issued a report and recommendation in favor of Defendants in the Probate Court, Dillard's asked this Court to grant Dillard's motion for summary judgment before the magistrate's decision became final. After the Probate Court issued its final ruling, Dillard's changed tactics, requesting additional discovery and briefing to re-litigate the matter in federal court.

Dillard's makes several arguments that the first factor points in its favor. Dillard's may have non-frivolous arguments that it could assert a lien over the settlement. But the argument that Dillard's presented "unsettled legal questions" that "potentially could require Supreme Court review" is far-fetched.[33] Overall, Dillard's avoids the primary issue: parallel litigation in state and federal court was unnecessary. Dillard's provides no reason that it could not have adequately protected its claims in Probate Court and had to litigate in this Court at the same time. Thus, the first factor points strongly in favor of awarding fees.

The remaining factors point, though not as strongly, towards a fee award. Dillard's concedes it has the ability to pay. An award in this case should provide some deterrence towards parties

---

[32] Doc. 55 at 4.
[32] Doc. 19; Doc. 19-4.
[33] Doc. 55 at 8.

-8-

Case No. 1:14-CV-01165
Gwin, J.

planning on pursuing a similar strategy in the future. The Defendants' request for fees does not clearly seek to confer a common benefit, but the Defendants were brought into this case rather than filing it themselves. A defendant seeking to defend himself from liability should not be required to demonstrate that his victory was meant to benefit others. Finally, as outlined above, the Defendants had a much stronger argument on the merits. In sum, the Court finds the award of fees to be appropriate.

**C. Reasonableness of Fees**

Dillard's makes a flurry of brief arguments as to why the fees requested are unreasonable. These arguments are unpersuasive.

First, Dillard's argues that the fees are too high because the case was stayed early on. Dillard's, however, sought to file several amended complaints and a premature motion for summary judgment. Dillard's – not the Defendants – are responsible for increasing the time billed.

Second, Dillard's argues that Bashein and Flowers did not retain separate ERISA counsel and chose to represent themselves in the matter. But lawyers can hardly be faulted for representing themselves, especially when the lawyers are litigating the same issue with the same parties in another forum. Dillard's ignores that hiring separate ERISA counsel and getting them up to speed on a case that Bashein and Flowers were already familiar with would only end up costing more money.

Moreover, the case was brought under ERISA, but did not hinge on an expertise in ERISA law. Instead, the primary issues were the nature of the personal injury settlement and the probate proceedings. Bashein and Flowers possess expertise in these matters.[34]

Third, Dillard's argues that "Defendants' work in this case either benefitted themselves as

---

[34] *See* Docs. 52-1, 52-2.

Case No. 1:14-CV-01165
Gwin, J.

pro se parties or fell within their ongoing responsibilities under the personal injury contingency fee contract."[35] Dillard's provides no support for the argument that the contingency fee for a wrongful death settlement – which was awarded *before* Dillard's filed suit in this Court or moved to intervene in Probate Court – should cover the additional months of litigation that Defendants had to defend. Furthermore, Flowers submits the uncontroverted affidavit that he shared in none of these fees.

The fact that Flowers's and Bashein's hours benefitted the firms themselves is to be expected. After all, Dillard's chose to sue two law firms and sought to disgorge funds they allegedly possessed. Dillard's cannot blame either firm for "benefitting themselves" by fending off a lawsuit.

Fifth, Dillard's argues that "the blurred lines between Defendants' roles as parties, corporate representatives, fact witnesses and personal injury counsel" makes it impossible for them to recover fees.[36] Dillard's cited no authority for proposition. Moreover, Defendants make a persuasive argument that Dillard's named their firms as parties in the federal case in order to make the proceedings more burdensome.[37] Dillard's blurred these lines itself by filing this suit.

Sixth, Dillard's argues that Bashein's hourly fee of $600 is unreasonable. Dillard's again argues that he lacks ERISA experience – an argument the Court dismissed. The Court finds that an hourly fee of $500 is appropriate for an attorney of Bashein's expertise and experience in this case. Dillard's does not make a clear objection to the hours Bashein lists for this case. Thus, the Court will award Bashein $500 an hour for 34.5 hours worked,[38] for a total of $17,250.00.

Flowers seeks fees in the amount of $25,338.65 for 113.09 hours of time billed. Flowers

---

[35] Doc. 55 at 11.
[36] *Id.*
[37] Doc. 52 at 10-11.
[38] Doc. 52-2.

-10-

Case No. 1:14-CV-01165
Gwin, J.

seeks $240.00 per hour for his own time and bills associates' time at $190.00 in 2014 and $195.00 in 2015.[39] The Court finds these fees to be eminently reasonable. Dillard's again fails to persuade that the time spent was greater than needed, only making the irrelevant argument that Flowers did not name his associates. Thus, the Court awards Flowers $25,338.65 in fees.

**D. Inherent Authority to Award Fees as Sanction**

The Court declines to use its inherent authority to award fees as a sanction. The award under under 29 U.S.C. § 1132(g)(1) provides Defendants an adequate remedy, which counsels against the use of the Court's independent authority to award fees.

### IV. Conclusion

For the following reasons, the Court **DENIES** Dillard's motion for a stay, **GRANTS** Flowers's motion for fees in the amount of $25,388.65, and **GRANTS** Bashein's motion for fees in the amount of $17,250.00.

IT IS SO ORDERED.

Dated: July 21, 2015               s/      *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE

---

[39] Doc. 52-1.